# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 4:20-CR-00288-01 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| KEVIN MILTON, | |
| Defendant. | |

## MEMORANDUM OPINION

### AUGUST 31, 2021

Defendant Kevin Milton seeks to prevent the government from introducing into evidence at trial two cell phones that were obtained in a search of his residence in Sunbury, Pennsylvania and the car parked outside. Milton asserts that the search was unlawful because the judge who granted the search warrant application did not have probable cause to believe that Milton's property was connected to the alleged drug dealing activities then under investigation. Milton is mistaken. In granting the warrant application, the judge considered a probable cause affidavit prepared by the Pennsylvania State Police that described how Milton initially instructed an associate of his (who, unbeknownst to Milton, was acting as a confidential informant) to place a backpack containing a substantial amount of heroin in the trunk of the car outside Milton's Sunbury residence. The affidavit explains that after the informant delivered the backpack, Milton exited his residence, retrieved

the backpack from the car, and headed back toward his home, at which time he was apprehended by the State Police. This affidavit provided the judge with substantial grounds for concluding that probable cause existed. Moreover, there is nothing about the warrant or affidavit that would lead a reasonably well trained officer to conclude that the search was illegal despite the judge's authorization. For these reasons, Milton's motion is denied.

**I.    BACKGROUND**

The charges against Milton concern his alleged efforts in February and March 2020 to distribute heroin and fentanyl in Northumberland County, Pennsylvania.[1] Milton is charged with one count of conspiring to distribute a controlled substance in violation of 21 U.S.C. § 846 and two counts of distribution / possession with the intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).[2] Although these charges arise from an investigation conducted by the Federal Bureau of Investigation ("FBI"), the investigation originated with the Pennsylvania State Police.[3] Milton's motion to suppress concerns materials seized by the State Police before the case was referred to the FBI.[4]

On March 17, 2020, the State Police filed a search warrant application and an accompanying probable cause affidavit with Magisterial District Judge John

---

[1]   Doc. 1.
[2]   *Id.*
[3]   Doc. 42 at 1–6.
[4]   *Id.*

Gembic, requesting judicial authorization to search two locations associated with Milton: (1) Milton's residence at 1125/1127 Miller Street, Sunbury, Northumberland County, Pennsylvania; and (2) a 2009 white Kia Spectra parked behind Milton's home.[5] In the probable cause affidavit, Pennsylvania State Trooper Edward Dammer outlined the bases for obtaining a search warrant of Milton's home and the white Kia.[6] Specifically, the affidavit details a series of events that occurred earlier that day involving a confidential informant who was in possession of a substantial amount of heroin belonging to Milton.

    The affidavit provides that the informant was storing heroin for Milton (Milton was on state parole and did not want the drugs in his residence in Sunbury) and that the informant was to place the heroin in the white Kia parked behind Milton's home. The heroin was inside a pink and black backpack, packaged in 5,250 individual bags that were consolidated into separate "Bricks," each containing five bundles of ten individual bags of heroin. The affidavit further explains the informant's efforts, at Trooper Dammer's instruction, to arrange for the delivery of the heroin.

    While present with Trooper Dammer and his colleague, the informant called Milton, who instructed the informant to bring the heroin to the Sunbury residence

---

[5] Doc. 37 at 2–3.
[6] Unless otherwise noted, the facts detailed in the remainder of the Background section are drawn from the probable cause affidavit, which Milton included as Exhibit A to his motion to suppress (*id.* at 18–27) and the Government attached as Exhibit 2 to its opposition (Doc. 42, Ex. 2).

and place it in the trunk of the white Kia. After the initial call, Milton followed up with the informant and told him/her to refrain from delivering the heroin because there were apparently police in the area. Milton and the informant discussed alternative drop-off locations. After one option fell through, Milton told the informant he would call back in a few minutes with another location. Ten minutes went by without a call from Milton. At Trooper Dammer's instruction, the informant called Milton, but Milton did not answer the phone.

The affidavit explains that at this point it was decided that the informant would go to Milton's residence and place the heroin in the trunk of the white Kia as originally planned. While under surveillance by the State Police, the informant went to Milton's home and entered the house to get keys to the Kia. He then walked out to the Kia and placed the pink and black backpack (the heroin had been removed by the State Police and replaced with materials that mimicked the original contents) in the trunk of the car. The informant closed the trunk and left the area. Around an hour later, Milton exited his Sunbury residence and walked directly to the Kia, opened the trunk, and removed the backpack. Milton closed the trunk and began walking back to the residence with the backpack. Undercover members of the State Police Vice Unit then identified themselves and approached Milton, who started running back towards the house. The State Police apprehended Milton before he reached the house and took him into custody.

Based on the application and accompanying probable cause affidavit, Magisterial District Judge Gembic issued the search warrant authorizing the State Police to search Milton's Sunbury residence and the white Kia.[7] During the search of Milton's home, State Police Troopers recovered, among other items, two cell phones.[8] The State Police later referred their investigation of Milton to the FBI.[9] On October 16, 2020, an FBI investigator applied for a warrant to search the cell phones recovered from Milton's residence.[10] The affidavit in support of the federal search warrant summarized the facts presented by Trooper Dammer in the initial probable cause affidavit.[11]

The Court conducted an oral argument on Milton's motion on August 24, 2021. This matter is now ripe for disposition.

## II.  DISCUSSION

### A.  Probable Cause.

Pursuant to the Fourth Amendment's prohibition on "unreasonable searches and seizures" (U.S. Const. Amend. IV), police must generally obtain a warrant—supported by probable cause—before conducting a search.[12] When determining whether a warrant is supported by probable cause, "[a] reviewing court may not

---

[7] Doc. 37 at 2.
[8] *Id*. at 2–3.
[9] Doc. 42 at 6.
[10] *Id*.
[11] *Id*.
[12] *See, e.g.*, *Maryland v. Dyson*, 527 U.S. 465, 466 (1999).

conduct a *de novo* review of a probable cause determination."[13] Rather, "[t]he duty of a reviewing court is 'simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.'"[14] "[I]f a substantial basis exists to support the magistrate's probable cause finding, [this Court] must uphold that finding even if a different magistrate judge might have found the affidavit insufficient to support a warrant."[15] Although this Court must "not merely rubber stamp a magistrate's conclusions, [the Court] must heed the Supreme Court's direction that 'doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'"[16]

In making a probable cause determination, the judge issuing the warrant looks at whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place."[17] The United States Court of Appeals for the Third Circuit has held that "a magistrate may find probable cause to search the target's residence even without direct evidence that contraband will be found there"[18]—"an accumulation of circumstantial evidence" can be sufficient.[19] When

---

[13] *United States v. Golson*, 743 F.3d 44, 53 (3d Cir. 2014) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).
[14] *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (quoting *Gates,* 462 U.S. at 238 (ellipsis omitted)).
[15] *Id.* (internal quotation marks omitted).
[16] *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (quoting *Gates,* 462 U.S. at 237 n.10) (internal citation omitted)).
[17] *Gates*, 462 U.S. at 238.
[18] *Stearn*, 597 F.3d at 558.
[19] *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002).

the crime under investigation is drug distribution, the Third Circuit has explained it is "a reasonable inference to conclude that drug dealers often store evidence of drug crimes in their residences."[20] This inference can be applied when there is "evidence supporting three preliminary premises: (1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking to the dealer's drug activities."[21]

    Here, the probable cause affidavit contains information sufficient to support all three premises. First, the affidavit provides powerful evidence that Mr. Milton was indeed a drug dealer. As set forth above, the affidavit details the State Police interactions with a confidential informant who was holding a large amount of heroin (packaged, as noted, in 5,250 individual bags that were consolidated into separate "Bricks") for Milton. The affidavit describes calls between the informant and Milton in which Milton coordinated the return delivery of the drugs, as well as the ultimate incident outside Milton's residence, where he picked up the drugs that the informant placed in the trunk of his white Kia. The affidavit leaves little doubt that the heroin belonged to Milton, and, given the amount and packaging as well as

---

[20] *Id*. at 104.
[21] *Id*.

the circumstances surrounding the drop-off, that he possessed it for purposes of distribution.[22]

Second, the affidavit expressly states that the Sunbury residence was owned by Milton and also establishes that the white Kia was, at the very least, in Milton's possession. Not only did Milton initially direct the informant to drop off the backpack containing the heroin in the trunk of the Kia (which was parked outside Milton's Sunbury residence), but he also retrieved the backpack from the Kia after the informant completed the delivery.

Third, the affidavit contains information sufficient to support Magisterial District Judge Gembic's conclusion that the Sunbury residence and Kia contained contraband linked to Milton's drug activities. Again, it was Milton who instructed the informant to leave the drugs in the trunk of the car. Once the bag was delivered, Milton exited the Sunbury residence, retrieved the backpack, and then immediately headed back toward the house. As the Third Circuit has held, the inference that drug dealers often keep evidence of their transactions at home "is

---

[22] *See United States v. Whitner*, 219 F.3d 289, 298 (3d Cir. 2000) (holding that it is "reasonable to infer" from the "delivery of . . . a large quantity of drugs" and the arranging of "a specific drop off point" that "the individual arrested as a result of the seizure is involved in selling drugs, rather than merely using them"); *see also United States v. Suarez-Arzon*, 664 Fed. Appx. 180, 183 n.5 (3d Cir. 2016) (holding that the existence of materials "commonly used in the packaging of heroin for street sale" constitutes evidence that the defendant was a drug dealer).

much stronger when the home is the first place a drug dealer proceeds following such a transaction."[23]

Milton contests this conclusion, arguing that specific facts contained in the affidavit establish that there was no nexus between his home and car and the alleged drug activities.[24] Specifically, Milton highlights three points in the affidavit:

- the informant was holding the heroin for Milton because Milton was on State Parole and did not want the drugs in his residence;

- Milton specifically instructed the informant not to place the heroin in his car because he believed police were in the area; and

- the State Police trooper—not Milton—ultimately instructed the informant to place the drugs in the Kia.[25]

Although these facts demonstrate that Milton was taking precautions to avoid police detection, that alone does not negate the possibility or probability that further evidence of Milton's drug activities would be found in his home and in the car parked outside it. Indeed, the other facts in the affidavit suggest precisely the opposite. Given the sequence of events, the magistrate judge may have inferred that Milton was conducting his drug distribution activities—in this instance, coordinating with the informant on when and where to deliver the substantial amount of heroin in the informant's possession—while in his Sunbury residence.

---

[23] *See Burton*, 288 F.3d at 104.
[24] Doc. 37 at 4–5.
[25] *Id*.

This inference is further bolstered by the fact that after learning that the informant placed the backpack with heroin in the trunk of the Kia, Milton grabbed the backpack and started carrying it back toward his house. If, as Milton suggests, the affidavit establishes conclusively that there is no probable cause to believe that any evidence of drug activity would be found in his home and car because he consciously avoided keeping such evidence there, Milton presumably would never have instructed the informant to drop off the drugs in the car. More to the point, upon learning that the informant delivered the drugs, Milton would never have retrieved the backpack and carried it back toward his house. But that is precisely what he did.

Reviewing the affidavit in its entirety, as is required,[26] the Court cannot conclude that Magisterial District Judge Gembic erred in finding that the affidavit established a nexus between Milton's home and car and his drug distribution activities. As such, the Court finds that the magistrate judge "had a substantial basis for concluding that probable cause existed."[27]

B.   **The Good-Faith Exception.**

Even if the Court were to concur with Milton that Magisterial District Judge Gembic lacked a sufficient basis for his probable cause determination, the evidence that resulted from the search of Milton's home and car would nevertheless be

---

[26] *Miknevich*, 638 F.3d at 182.
[27] *Id*. (citing *Gates*, 462 U.S. at 238).

permissible under the good-faith exception. Established by the Supreme Court in *United States v. Leon*,[28] the good-faith exception provides that the "suppression of evidence is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority."[29] Accordingly, in deciding whether the good-faith exception applies, this Court must determine "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."[30] This may occur in the following narrow situations:

(1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;

(2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function;

(3) when the warrant was based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'; or

(4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.[31]

Milton invokes the third basis for overriding the good-faith exception,[32] arguing that the warrant "failed to establish any nexus between the residence and

---

[28] 468 U.S. 897, 918 (1984).
[29] *United States v. Hodge*, 246 F.3d 301, 307 (3d Cir. 2001) (internal quotation marks omitted).
[30] *Leon*, 468 U.S. at 922 n.23.
[31] *Hodge*, 246 F.3d at 308 (brackets omitted).
[32] Although Milton asserts that the warrant is "facially deficient" (seemingly invoking the fourth basis for overriding the good-faith exception), the arguments he advances concern only the indicia of probable cause. Regardless, there is no question what properties the State Police were being authorized to search, as the warrant specifically identifies the premises at issue. *See* Doc. 42, Ex. 2 at 1 (listing the following "premises and/or person to be searched": "1125/1127 Miller

drug trafficking."[33] Milton specifically objects that the affidavit "does not contain any statements attributable to the confidential informant that would justify the affiant believing there is a nexus to the property."[34]

As detailed above, the affidavit provides enough information to support a reasonable inference that evidence of Milton's drug dealing activities would be found at his Sunbury residence and in the car parked behind it. The State Police trooper who prepared the affidavit specifically attested to the fact that troopers were present with the informant when he called Milton and discussed possible drop-off locations for the heroin, and that members of State Police Vice Unit observed the events that transpired outside Milton's Sunbury home. It is unclear why Milton believes the affidavit needs to contain statements regarding a nexus to the property that are specifically "attributable to the confidential informant." In any event, he is mistaken: the facts to which State Police troopers could personally attest are sufficient to establish a nexus between Milton's home and car and his drug distribution activities.

## III. CONCLUSION

Given the specific facts detailed in the probable cause affidavit connecting Milton's drug distribution activities to his Sunbury residence and car, the Court

---

St. Sunbury, Northumberland County" and "2009 white Kia Spectra parked at the above address. KHW-9087").
[33] Doc. 37 at 7.
[34] *Id*.

finds unpersuasive Milton's claim that the affidavit provides insufficient information to support a probable cause finding. Regardless, at a minimum, the affidavit is not so clearly lacking indicia of probable cause to place the search outside the bounds of the good-faith exception. Accordingly, Milton's motion to suppress is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge